Good morning, Your Honors, and may it please the Court, Alana McMains on behalf of Kyle Shephard. This Court should reverse the District Court's... Counselor, will you be requesting some time reserving? Yes, Your Honor, good point. I'm gonna request two minutes held off for rebuttal. Thank you. Okay, go ahead. This Court should reverse the District Court's denial of Mr. Shephard's motion to suppress because the District Court clearly erred in two ways. First, by finding, with very little supporting explanation, that Mr. Shephard consented to search. And second, by improperly analyzing the voluntariness of any alleged search. And if it's okay with the Court, I will proceed, I think, with the voluntariness issue first. So while Mr. Shephard does maintain that he did not consent to search, assuming that this Court upheld District Court's finding and determined there was consent, reversal is still appropriate because the government failed to meet its burden of finding that that consent was voluntary. The Court acknowledged, as well as the government, really, that four out of the five voluntariness factors used in the circuit leaned in favor of Mr. Shephard and his argument that any consent would be involuntary. The one factor that was not in his favor was the fact that no guns were drawn. Everything else wasn't. But isn't it the government's point that, you know, hey, this is not a, you know, however many factors are on your side. They look at the totality of the circumstances here and weigh those factors depending on what happened here. So why, what does that matter? Absolutely, Your Honor. And you're correct that it's not simply a rote recitation of the five factors, check them off, and then we win. We acknowledge that. However, I think there were two primary errors with the District Court's and similarly the government's arguments in this case. And the first was that I think there was an improper characterization of the fifth factor related to whether or not Mr. Shephard was advised that a warrant could be found. And the second issue was... What is that? I mean, in fact, a warrant could have been gotten. And it's a little strange that it wasn't gotten beforehand. But it certainly could have been. And it really was kind of futile. I mean, the only question, I suppose, is whether he would have had to be released in the meanwhile. And they probably had enough probable cause to arrest him by then anyway, because they'd found, they'd stopped his girlfriend, conspirator, and they knew that she had, they may have had probable cause anyway to arrest him at that point. But that's the only thing that would have mattered, because certainly they could have gotten a warrant. Your Honor, I think that the record demonstrates that there was probable cause to arrest Mr. Shephard. And obviously, they had already obtained a warrant for his residence in San Marcos and his car and to search his person. So telling him that, which was completely truthful and in a non-threatening way, what was wrong with it? Well, Your Honor, first, I don't know that the record really demonstrates probable cause to get a warrant to search his hotel room that he was staying at there at the casino. I don't believe that there was really anything shown by the out of that location. So I just, I'm not ready to concede that point. Well, if there was probable cause to get a warrant for his house, then why wasn't there probable cause to get a warrant in a room that they knew that he was staying in for a while? Your Honor, I'm not sure that it was clear on the record as well how long he, well, it was clear how long he'd been staying there, but there was some debate over whether the government knew how long he was staying there and whether this was merely just a couple nights' vacation versus something that he was using as his home. But regardless, I think that in this situation, when you look at the circumstances, the way that Deputy Maleno spoke to Mr. Shepard in saying, if you don't consent, I'm just going to go get a warrant, it was exactly what this court talks about when it talks about voluntariness and the heart of what that means, which is that he felt he had no choice. It was a foregone conclusion. And although this court has held that this factor might be less weighty when there could be probable cause, it still is an important factor that reflects whether his will was overborne. And I think when you combine that with everything else, you find that this was not a voluntary search. And that leads me really to the second error that I believe that was made by the district court. Yeah, let me interrupt a second. You mentioned the government didn't show there was necessarily probable cause to search his hotel room, and we could agree or disagree with that. But do they actually have to show that or just that it was likely when the officer said what he said, that it was likely that they probably could get one? Or do they actually have to show in this voluntariness hearing that there was probable cause? Your Honor, that's a good question, and I don't believe that they necessarily need to exactly lay out a perfect case for probable cause. But again, I just think that the record is pretty bereft of anything specifically related to anything tying the drug dealing activity that was allegedly going on with that hotel room. And again, I still think that regardless of that, that factor still has weight, even if that probable cause did exist. Going back to your voluntariness challenge, one of the things, if I remember correctly, that the judge mentioned was that Mr. Shepard refused to sign a property sheet. Why doesn't that show that he knows the difference between saying yes and no, and when he really didn't want to do something, he didn't sign it? Your Honor, I think that absolutely demonstrates what was different here and why that last fifth factor matters. He did invoke his Miranda rights, and he did refuse to sign that document because it was incorrect. But he wasn't told whether you sign this document or not, I'm still going to say that you had no money on you. He wasn't told whether you invoke Miranda or not, we're still interrogating you. Does it matter also that that happened at the booking and not initially when they sought and obtained the consent? Yes, Your Honor, and that would be my second point. Both of those things happened after he had allegedly had this conversation about consent and Deputy regardless of what you do. So at that point, I think he had already gone through that, and so he'd learned more things later by the time those two issues came up. So I don't know that those two can be used to demonstrate why he would have known at the time that the question was asked about consent. What did he learn between the time he was in the holding cell casino and the time that he invoked his Miranda rights and refused to sign the property? I'm not saying that he learned something different. I guess I'm saying that first, I think that those two issues are different because he wasn't told that it was futile for him to invoke his rights in those two ways. But second, I'm not sure that they can demonstrate that he had some type of savvy in the first place because it's just two different circumstances than those that happened later. I suppose the thing that was different is that at the time he gave the bench or something with nobody else there and nobody essentially just isolated. Yes, Your Honor, and that was the second point I was making, is that even when looking at the totality of the circumstances and stepping away from just checking off these factors, I believe that everything together really belies the casual and friendly vibe, that was the quote of the district court that has been used to describe this event by the government. Counsel, maybe the other thing he learned was that at that point he's being arrested into the jail. He's being booked into the jail at that point. And whereas at the beginning they were telling him, oh no, this is a, you know, we're just detaining you here. You're not being arrested. So could that be another difference? Yes, Your Honor, absolutely. I think that the circumstances of those last two interactions with the police were very different than that first one when it was earlier and he didn't quite understand what was going on. He didn't realize that he was going to be subjected to a search that he did not consent to or did not voluntarily consent to. So I do think those are totally different circumstances. Do you want to reserve your time? Oh, yes, Your Honor. Thank you so much. Please, the court, Daniel Zip on behalf of the United States. Going to the voluntariness factors, we believe the district court properly weighed the five factors and it was not clear error for her to determine that the consent in this case was not involuntary. At the outset, we don't agree that four of the five factors weigh against a finding of consent in this case. Certainly the failure to inform him that he didn't have to consent and the fact that he was in custody weigh against us. The fact that none of the officers were pointing their guns at him or display their weapons in any manner certainly weighs in our favor. The other two are more of a toss-up. Certainly on the Miranda issue, this court has recognized that that Miranda goes to the Fifth Amendment to the right against self-incrimination. It doesn't directly line up to the Fourth Amendment analysis here. And in Perez-Lopez, this court even recognizes that it's an open question as to whether this is even relevant to the analysis anymore. So we would view that as sort of not cutting one way or the other in this case as to whether he was given formal Miranda rights in this context. So he was changed to the wall, correct? Yes. He was in a small room, correct? Yes. He was escorted by five officers with badges in front of them, removed from a public space, correct? That's correct, yes. With other security officers' assistance there as well, correct? Correct. He was placed in this room, correct? Yes. And then they didn't advise him of his Miranda warnings, correct? That's correct. And that was voluntary? Yes, Your Honor. At the very least, the district court who heard two days of testimony of this and heard the live testimony from the officers who viewed the video, her ultimate determination was not clearly erroneous that this was a voluntary. Do you think that's a factual determination? Yes, that's the case. The ultimate voluntariness determination. That's what this court's case law says, yes. And ultimately, it's a question of whether the district court's determination here was so illogical or implausible or without support and inferences from the record that this court can reverse on a clear error standard. But going to the last and final factor... Could they have gotten a warrant? Yes. They had a warrant to search... One of the problems here is they almost surely could have because there was evidence that they knew that he'd been there for a couple of weeks. But the officers... That's not really an established fact in their record because the officers kept saying that he supposedly came there two weeks before and said he didn't remember anything. Right. There was a different officer who came two weeks before when the court held a second day of testimony. He explained he didn't remember it. So although it does appear that he really was there for two weeks and it really wasn't established at the time... Testified that he did not know that he was in the room. He did not remember that. So if they didn't know that or if they couldn't have told the magistrate that, then what? And with regard to whether they actually could have gotten a warrant? Well, they certainly had probable cause to search his house and to search his person. So it's difficult to see how probable cause to search someone's person wouldn't also provide enough probable cause to search the room where that person was staying, particularly if they could also search his house. What showing has to be made... Counsel, the case was different though. This was a hotel room and you've just indicated that they didn't have someone that was going to be able to testify that he had been there for a few weeks, correct? For a few weeks, certainly. But his key card was in his girlfriend's car and he had a key card on his person and the security officers at the casino confirmed that he was staying in that room. So again, if they knew they had probable cause to search his person... But was the girlfriend stopped in his car or her car? It was her car. And again, what formal showing needs to be made as to probable cause? In Kaplan, this court simply said that there's diminished weight that goes to this last factor if the officers, in fact, could get a search warrant. We believe that the record here is clear that they had probable cause to get a search warrant. So that factor ultimately doesn't weigh strongly one way or the other. Can you talk a little bit about the other issue about the consent, whether he actually gave consent? What bothered me, I understand that the district judge believed the officer and did not believe him. But although she had earlier recognized that the officer had been convicted of false statements and so on, at the point that she actually made this credibility determination, she said very little. And the main thing she said during that hearing was that there was sloppy police work. So she didn't seem to be, I mean, she seemed to be taking this as an ordinary credibility determination between two witnesses rather than between one witness who had recently been convicted of false testimony and the other one. At the outset of the hearing, the court recognized that this past finding by the jury was extremely relevant. I thought that was not the same hearing. I thought it was a different hearing. At the beginning of the first hearing, she said this is extremely relevant. The government had asked not to get into it. But it wasn't the hearing at which she made this finding. It was a different hearing. So she found that this was extremely relevant. The facts came in through cross-examination. And then critically... I thought that was in the guise of assuming what was going to come in before the jury, essentially. No, it was what was going to come in before her. And she ruled, because I'm the fact finder, let's just let it in. And I find it very relevant. I would push back a little bit on the fact that he was found guilty of a false statement crime. This was a jury verdict that he had made false statements as part of an arrest. Oh, no, no, you're right. It wasn't a crime. It was a 1993 crime. Oh, yeah, for several million dollars. And as the prosecution outlined beforehand, this was ultimately dismissed after the jury verdict came in. They settled it and dismissed it with prejudice. Wait a minute. For several million dollars. What's that? They settled it for several million dollars. Correct. And certainly, the court considered it. So it wasn't dismissed. Go ahead. Uh, certainly the court considered it. The defense cross-examined on it. The district court here, sort of by happenstance, was in a position to have sat through two entire trials. One resulted in a hung jury and one ultimately resulted in the verdict. She was in the best position possible to understand exactly what the officer had testified to and what the impact of that case had on his credibility here. At the end of the day, at ER 154, the district court directly addressed Mr. Shepard after he testified that he did not give consent. She asked him to explain what exactly the officer said. He explained that he said, yes, I object, and then sort of rambled on for a bit. And then shortly after that, the court made this, or at the next hearing, the court made this credibility determination and said, I find what Officer Maleno said credible, and I find the directly contrary thing that Mr. Shepard said to be incredible. That type of determination based on this demeanor and tone and the sort of things that only a district court can see from live testimony is not demonstrably clear error in this case. In fact, as the court held in Anderson, as long as it's a coherently and facially plausible story not contradicted by extrinsic evidence, it can virtually never be clear error for a court's credibility finding to rise to the level of clear error. We will leave that to the case here. And just one final point on the voluntariness issue. Again, certainly this court could disagree with how the district court balanced the five factors in this case. The court also relied heavily on the fact of the tone of this interaction, the fact that multiple witnesses testified that it was calm. Even Mr. Shepard admitted that no one raised their voices or used any sort of threatening manner in this case. At the end of the day, this is a factual finding by the district court who held the hearing. Can you point to any specific case in which voluntariness was found on similar facts, that is somebody handcuffed to a wall in a small, I mean, I don't mean the same, but the same aura that is. He was isolated in a small room and handcuffed to the wall and so on. Sure. I think, I don't have one with a handcuffs to the wall, but in Espinosa Flores, which we cited in our briefs, this court, there was multiple factors that weighed against voluntariness. The officers initially had their guns drawn and then put them away. The defendant was in custody. He wasn't told that he had a right to refuse. They lied to him about their ability to get a search warrant. And at the end of the day, the only factor weighing in favor of it was the Miranda warning. But again, this court, and this is an unpublished decision, as many government wins are, that the court relied heavily on this clear error standard and held it on the overall totality of the circumstances. The district court's decision was not illogical or implausible. Counsel, I guess what I, I turn to, you know, the long line of cases that we have under Miranda, where the court has instructed us, and our case law certainly talks about this, that custodial environments are inherently coercive. Isn't that what, why don't we apply that sort of, you know, looking glass at what happened here? That this was a coercive environment where someone then voluntarily acquiesced to a search of their hotel room. Certainly the court considers that. It's one of the five factors in the totality of the circumstances. This is, the Supreme Court has recognized that this is different from Miranda, and that the Fifth Amendment rights in that, in that context require some sort of prophylactic warning. In this case, the fact that they, that the defendant was not told that he had the right to refuse consent does not rise to that same level, and it's just one of five factors that the court views in the totality of the circumstances. But why not view it, why, why shouldn't we be looking at it from, again, that looking glass? That this was a coercive environment. You, you would concede this was a coercive environment? I would concede that he was in custody, and that that is one of the factors that weighs on the ultimate determination on all the facts that are unique in each case as to whether this consent was the result of duress or, or coercion. So it's certainly a factor, but the law is clear that that's not, it's not a situation where anytime someone's in custody like this that they necessarily can't consent. Well, for one thing, if he doesn't consent, he presumably is going to stay there in custody in this little room while they go off and get a search warrant. Yes, and the officer told him that in a calm, nonthreatening way. Might have preferred recognized on that last factor there, the tone matters, and whether it's done in a threatening matter, you know, I don't care if you're going to consent because I can go get a warrant, or sort of calmly, more like a Miranda, like here's the situation, I can get a warrant, or you can consent. And the court went through that specifically. One other thing is that, well, I guess maybe this goes more to the whether he consented question, but as the officer reported what he said, he said something like, do you consent to the search or I can get a warrant? All in one sentence. Yes. And so when Mr. Shepard says, yes, I guess, or he says he says, yes, I guess, how did he know what he was saying yes to? I think the testimony for Mr. Milano was that he understood that as a consent, that he was saying, yes, I guess, go get a warrant. Or he could say, yes, he could say, yes, I guess you can get a warrant, or yes, I guess I consent. It's a compound sentence. That's true. I think Officer Milano's testimony was that he asked if he would consent to his room, and if not, I can get a warrant. I'm sorry, I didn't hear that. Officer Milano's testimony was clear that he understood that as a consent. Well, I understood. I understand that that's what he understood, but when you give somebody a compound question, essentially, then the answer isn't so clear as to what he's saying yes to. Officer Milano testified as to his understanding, and of course, Mr. Shepard took the stand and did not testify that it was his understanding. Well, I understand. He said he didn't say that at all. He said I didn't say anything at all. So I think Officer Milano's testimony, which the court found to be credible, was that this was a straightforward request for a consent to search, and that he gave his consent. Any additional questions? No. Any additional questions? No. All right, thank you. Your Honors, I don't believe that this was akin to a Miranda rights when he told him about this he did not explain this is how the law works. I can, if I have probable cause, go seek a warrant, or you have the right to not consent and lay it out that way. Obviously, when the law was laid out to Mr. Shepard about Miranda, where he was given the full facts of how things work, he invoked his right. The only reason he did not invoke his right here to refuse consent is he was never told he had the right to refuse consent, and because his will was overborne. Does it matter that the judge obviously found Mr. Shepard not credible? She specifically found that he didn't say, no, I object. Is his lack of credibility also something we should consider in the overall voluntariness things? Because he also talked about how he was feeling. Your Honor, I suppose that it is correct that you're reviewing the district court's assessment, and so that is something that would be taken into consideration. But overall, I still think that the majority of the clear-cut factors that are obvious and don't depend on his testimony, he did say he was feeling like he was having a panic attack. The handcuffs were too tight, although they acknowledged that they loosened them later. So some of the things he said were corroborated later. So I think that one issue of her saying he was not credible on that one statement doesn't really affect the analysis, because most of it is either corroborated by other testimony or is just plain on the facts to be seen. I have 10 seconds, but... No, you don't. No, you're over. Oh my gosh, I'm so sorry. Well, thank you very much, Your Honors. Thank you. You're better at looking at the clock than I am. You're pros. Have a great day. This case will stand submitted.
judges: BERZON, MENDOZA, Bolton